Right now we have 0671, the people of the state of Illinois, after the lead by Justin Pelosi v. Joel A. Brodsky, appellant. Mr. Brodsky, are you ready? Once again, my name is Joel Brodsky. I'm the appellant. This particular appeal, we have two today, concerns the 2022 IAG order that was entered against me that this court dealt with in its also 2022 opinion. But first I'd like to briefly go over how we got here. You know, in May 17, 2022, I was interviewed by WGN-TV about a different subject, not about the Peterson case. But at the end, the obligatory question about Peterson came up. They talked about, now you have to understand, and I don't think people really understand, that when these are played on TV, these are highly, highly edited. As I think maybe people now realize after the 60 Minutes episode with President Kennedy Harris, that often these things can be edited and taken out of context. While they did play the part where I said, I think it's time for things to be publicly disclosed, what they didn't play was when the reporter asked me, well, how can you do that? And I responded, well, I would need to get Drew Peterson's, or Drew's permission, but I think I could do that because he knows he's never getting out of jail. And the never getting out of jail part got played, but the part before that didn't. Now, on May 19, two days later, and probably one of the only diligent, the few diligent things that were done by the state in this case, I was before Judge Vermilla, and I don't know if you recall, but I was given notice, I showed up, and I tried to approach the bench where I could respond to the allegations and perhaps even explain what really occurred and how it was edited. And they do this all the time. It's not specifically this case. Everything you see interviewed on TV, by news, or they do an interview, is highly edited. Much of the time out of context. That's the difference. Why they do it is a different subject. But instead of allowing me to address the court, I was threatened with contempt in jail if I didn't sit down and be quiet. He did not allow me to even speak at a hearing on an order that was to bind me and restrict my First Amendment rights. Of course, I immediately appealed that. I didn't go back, as I know was kind of suggested in the opinion, frankly, because I was very angry at the way I was treated, and I thought that how could an order where I wasn't even allowed to speak about an order that was going to bind me and say anything in defense, be upheld? This 22-02 opinion did not vacate the order, but did limit it to attorney-client privilege. Since I was never intending to violate that, I saw no reason to go back or deal with the matter further. So that's how we got here today. So it's not your intention to violate attorney-client privilege? Never was. Hold on. And Brodsky 1, as I'll call it, the last appellate opinion, essentially limited its interpretation or restricted its interpretation of the gag order to attorney-client privilege. Why are you appealing? Well, here we are now. Why did I make the motion for a leave to dissolve it? Sure. That's the question. Well, we're here now three years, seven months since the post-conviction petition has been filed. Nothing has been done. You can look at the docket as well as I can. It's public. It's part of the court record. I thought maybe since these briefs were filed that something would be done maybe because of some of the things I said. Nothing. Still, since the appeal, nothing. Not even the mental health exam, which is really irrelevant to a post-conviction greatly. And it's three years in the gag order. One year, three months they've been trying to deal with this mental health exam. And then I get to the point where Peterson again shows up on TV. The only two times I talked about his case, well, in the last four years is when he's given national TV interviews. And they, of course, call me. Other than that, I haven't. But in any event, all of a sudden it's been weaponized. When you look at what was filed concerning the other appeal, when you look at what was filed, it said, I talked to the media. And all these gag orders are directed at, Brodsky shan't talk to the media. It's not like I can't talk. It doesn't say Brodsky shall not disclose to the state's attorney what he knows. It says I can't talk to them. It says specifically directed at the media, which is curious. Well, it's not so curious in the sense that the goal is to protect the integrity of that proceeding. And by talking to the media, something could potentially be broadcast that impacts the integrity of the media. So it seems like a good reason to target conversations to the media, I suppose. Well, yes, but if you wanted somebody who was trying to talk about an unsolved crime, they'd be more worried about talking to the media. But in any event, as concerns. I think you made earlier your case. Talking to the media, you have absolutely no editorial control to make sure that your statements contextually are accurate. So why would your argument not support that? Well, what I'm just saying is that the First Amendment is directed at speech and specifically public speech about matters of public concern. And that's why I thought I mentioned that, because that is the core of the First Amendment, public discussion about matters of public interest. And the judicial system and how cases are handled is important. Is this really the public interest? You know, funny you actually said that. I would have thought not, but apparently it is. Today, one of the things you'll see in the newspapers is a 30-year-old, well, 20-year-old murder case, the Menendez brothers. It's all over. There's documentaries and they've got a new here. Well, isn't that a justification back again to what you're dealing with the media? And face it, it's not news. They're selling space and time. All media. It's a business. Yeah, it's entertainment. Well, it's basically just pure business. You sell space or you sell time if you're in the media. Yes, Judge. And it's clickbait, if you want to call it that, for that business. Correct. Well, Judge, what I would say, Your Honor, what I would say is that, you know, that's a different discussion. The media today is probably not what our founding fathers envisioned, yet it does have an effect. For example, if things were said that concern criticism of the current state's attorney or the way the case is handled, these are things of public concern. Now, how stimulating debate on that is what it's about. You know, we'll get no argument from me that the current media doesn't, is a, has a big problem in how it, whether or not the equity portrays, but this is our system and this is the First Amendment. Nobody's, it's not, and I can, in any event, I can... But don't the courts have an equal obligation in regard to due process and fair trial? I understand, Judge, but here's what the appellate courts, because they value, the First Amendment so highly, courts have, historically, even in the recent days, that in order to restrict media, in order to restrict speech, it has to be a clear and present danger, a serious and imminent threat to a proceeding. Those words have meaning. And if there is no clear and present danger, there's no serious and imminent threat to a proceeding, then you can't restrict somebody's speech. Now, like I said, this is different from an attorney-client privilege. Right. Okay. But something I could say about the way that Judge, the trial judge handled that case and the things that he let occur that may not have reflected well on him or the way, or the veracity of the way the case was handled. Something about the attorney who ended up taking actions, that the attorney who ended up taking the case on appeal, and to the Supreme Court, and to Hades, how he had a conflict, and how they could be allowed. These are things of public concern that the media, that the public, and my, has a right to be concerned about. And right now, under the state's interpretation, I can't even talk about, well, especially given the other order that we're going to be talking about shortly. However, even though... Is the fact that you're a potential witness in the post-conviction case, doesn't that impact our analysis in terms of scope and propriety? Yes, Judge, but I question the veracity of that because in four years, if I'm such an important witness, nobody's talked to me from either side. Just even looking at the allegations in the post-conviction petition, it would make sense that you would be a witness. Well... If they're pursuing those allegations. If they're pursuing, and if they're not barred by res judicata because they... Right, but just looking at it on its face, it would seem likely that you would ultimately be a witness if they persist in some of the claims. If the attorneys on both sides, either side, was going to put a witness on the stand that they never spoke to, which... Well, it's hardly surprising to you that we might wait until right before the hearing to conduct the witnesses. It's happened from time to time. Yeah, it's been known to happen, but three years and seven months, and you're not even past the pleading stage in the post-conviction, and I'm here. How long can that go on? There was never the intent of clear and present danger, and clear and present danger and serious and imminent threat was never three years and seven months. But the concern is the threat to the ultimate proceeding. The fact that, and there's going to be an ultimate proceeding. The fact that there seems to be docket management issues down below doesn't impact the threat immediacy. Well, but they're all by, if you look at the docket, they're all by agreement. It's not, but it's not more documented. But what I mean to say is this, Jim. We're in post-conviction. We're talking about a case that's been confirmed on four different occasions. You know, trial court, appellate court, supreme court, habeas. Twelve judges looked at that case and found no problems in the trial or the way it was handled. You know, because this court's probably handled so many post-convictions over the years. You know, the likelihood of something happening, in this case, actually getting to a retrial are extremely, I would say, improbable. It is maybe one out of 10,000, in Latin, maybe even more than that. So is that, you know, and that's even getting to that now. Is that, you know, and then it's got to hold up on appeal and then there's got to, getting to a retrial. We're talking about something very, very remote. And many, many years off, at best. Yet, it's being treated as if the trial's next week or next month or even five months or four months away. And the restrictions being put on me. You know, if nothing else, I would have thought that bringing this motion and pointing these things out would have spurred the prosecution and the defense, or Mr. Peterson's current attorneys, to action. But it didn't. There's still, I think it's not just one step too back, but it's two steps back, two steps back, two steps back. They get further and further away from anything meaningful happening. There's been a motion to dismiss. This seems far beyond. Yeah, I understand, but what I'm saying is. Your point is that it's taking so long that. And I'm barred. You are barred. But if the bar was correct in the first place, and this is my question, which we'll assume it is, because this court said it was back in 22, the concerns that justified that panel's decision haven't gone away. Attorney Klein privilege, what the panel said was, it's read to mean it restricts, it bars me from breaching the attorney Klein privilege and no more. It's specific words in paragraph 50, 51 of the opinion. That was never a risk anyway. Right, but, but, you know, and I wish I was able to, what I told you at the beginning, was able to be put into the record if I wasn't threatened with jail if I approached a bench back in the trial judge's case, courtroom. And then I could argue that on the record, but it was never there. But in any event, but, you know, why, I have, by the way, you know, I probably have had 1,000 other clients out there, and none of them are concerned to go get gag orders against me and not breach the attorney Klein privilege. I'm not going to breach the attorney Klein privilege. I haven't breached the attorney Klein privilege. So the question is, why do we need the gag order at this, at this point? Now that doesn't, you know, if something gets closer, something happens, something changes, yes, but at three years and seven months, three years in the gag order and three years and seven months of a case that is going nowhere, and where there's a heavy burden and a presumption against constitutionality, where clear and present danger and serious and imminent threat is required in order for it to overcome, and evidence, by the way, that there is, which the record is devoid of, then this, you know, at some point, it just can't go on. I mean, what is it, three years? Three years, seven months isn't enough. Is five years enough? We're going to give you an opportunity in rebuttal. Our red light's on. Oh. Let me just double check and see. I just told you, any questions at this time? Please. Thank you. I don't know you right now. All right, Mr. Broski, we'll give you an opportunity in rebuttal. Thank you, John. Mr. Nicolosi. Good morning, Your Honors. May it please the Court, Mr. Broski, the State submits that this Court should affirm the trial court's denial of the appellant's motion to dissolve his May 19th gag order from 2022. As this Court had mentioned during Mr. Broski's argument today, that nothing has changed in this case.  Yeah, the State obviously acknowledges that there is a delay in Mr. Peterson's post-conviction proceedings below. That's not a significant change? Say that again, Your Honor. That's not a significant change? My Lord, three years? That's certainly a lot of time. I can't speak to what's happening below. I don't quite know. I don't know where it is at this very second. But the fact remains is that Mr. Peterson... Well, apparently, where it is is nowhere. I mean, isn't the docket sheet showing that? Yeah, but it's still pending. I mean, I think we can all agree that it's still pending. And Mr. Peterson's post-conviction petition is still on file. And as I argued in my brief, and I don't think anybody can deny this, there still is the possibility that he is granted a new trial at some point down the road. That's all I can say because I think that's a fact. And again, we can argue about what's happening and whether this is... But we've got to determine whether it's a significant fact. I don't think it's significant, Your Honor. I'm going to stand firm on the fact that that's not significant because we're talking about whether or not there is a serious and imminent threat to the fair administration of justice. And again, the fact that this petition is still pending and it's... What is that threat? That Mr. Brodsky reveals what happened to Mr. Peterson's third and fourth wife. As he has said, he knows all the information and he said to WGN, he thinks it's about time to do that. So if, of course, if clearly Mr. Peterson's... I know this was talked about in Mr. Brodsky's argument too. Was that covered under... I mean, he's barred under attorney requirements not to... Sure. Sure. But again, he has went on the media and said that he's thinking about disseminating everything he knows about it. So clearly he and his, as I... So how is that harmful that he's thinking about it? Well, Your Honor, that's pretty close to walking up to the line and we would argue, as I mentioned in my briefing, that Banfield on that News Nation podcast, he talked about the line. He specifically mentions the line and that he almost went over and he kind of stopped himself, kind of told the host to draw their own conclusion. Mr. Peterson said that Mr. Brodsky wouldn't let him testify. Mr. Brodsky on that podcast said there's only one reason a lawyer wouldn't let a client who's going to testify to something that the lawyer knows is untrue. He said, draw your conclusion. You don't need a PhD, all this kind of stuff. The state admits that Mr. Brodsky is really kind of muddying the waters here and really, really getting close to the line that he's not permitted to cross. So we've got to talk about closeness to the line? He's never crossed. Well, we're talking about threat. I mean, the threat is not the action itself. We're talking about a threat. I think the definition of the threat is getting real close to the frame. Isn't the point that suggesting to the media that there is something he could disclose is tantamount to telling the media my client did it? That's the point. Otherwise, it wouldn't be a relevant discussion in the first place. I completely agree with you. And that's the threat? Yes. To the integrity of the post-conviction proceeding? I would agree, Your Honor. And I think this Court in its 2022 decision echoed that. Talking about the comments to the rule of professional conduct 3.6, Mr. Brodsky was talking about the words have meanings and talking about serious and imminent threat. And I would agree that the words have meanings. This Court discussed the comments and to the rule 3.6 and Mr. Brodsky's comments he was talking about the character and credibility, reputation of his client. He was referring to a confession, admission, or a statement made by Mr. Peterson. And he also was kind of saying that he had an opinion as to the guilt or innocence of his client. The comments attempted to define serious and imminent threat. We can all talk about what we think it is. I think this Court in 2022 referring to those comments basically is pointing to authority on how to define that. And the state estimates that today the threat posed by Mr. Brodsky's... What you've just gone through would be great findings for a court to make. When it comes to the motion, Mr. Brodsky's motion to dissolve the 51922 gag order, what findings did the trial court make along those lines? They basically echoed this Court's 2022 decision that said that nothing has changed since the finding of, since the issuance of that gag order in 2022. It was referring to Mr. Peterson's pending post-conviction. It basically said that he is still entitled to a potential fair trial if and when it ever comes. And that's the basis of my brief in this case, that nothing has changed since that gag order was issued in May of 2022, based on the fact that Mr. Brodsky has, a couple times since that, or at least once since that gag order, has went in the media and discussed what he knows and threatened to say what he knows, those kind of things, that we're in the same procedural position as we were at the time the gag order was issued. And therefore, this Court should affirm that decision to not dissolve that gag order, because Mr. Brodsky is still a serious and imminent threat to Mr. Peterson's rights. And that's our position. That's the position of my brief. And to state, ask this Court to affirm that decision. If there are any other questions, I'd be happy to answer them at this point. Thank you. Thank you. Mr. Brodsky, rebuttal. When, once again, I heard Joel Brodsky appellant again. Once you say nothing has changed, I think that is the problem. We're still, this case is still on Mr. Peterson's handwritten, the post-conviction cases, on his pro se handwritten petition, which hasn't been amended yet, three or seven months. And as far as my current status, I was suspended. The suspension period has passed, for about two years passed. I've just chosen not to go back to practice, so. How about, is that in any way relevant? I don't think so, Judge, because I don't think whether you're practicing or not, or currently licensed, or a lapse, has anything to do with the attorney-client privilege. That's a privilege that, if everything was proper when it was started, then it binds you for life. That's it. It's a privilege that it stays. Now, as you said, as Your Honor, Justice Holbrooke said, you know, said I said, supposedly, I was thinking about it. Now, Your Honor's correct in that, and if there ever was a hearing back in 2022, and I was asked about that, or a record was made, we would have found out that I was thinking about it, but if I wanted to do it, I would need Drew's permission, because, and I believe, and I believe Drew might give it, because he's never getting out. Remember, he has another murder conviction that has been upheld, that he also has to serve. And so, he's never. The concern I have with this discussion, it was in your initial presentation as well, you're essentially giving testimony, which we have nothing in the record to say that this was your intent. When you were asking to dissolve the injunction, did you ask Gleave to provide additional testimony along these lines to the judge? No, Judge. Because if not, I don't know how it's appropriate to ask us to consider that. But what I did ask for was that the state be required to keep its heavy burden of keeping it in place, because the burden is even on a motion to dissolve, the headquarter is the First Amendment, this burden is on the state to meet its heavy burden, to show that it is still an imminent threat, and there's a clear and present danger. To a proceeding. And that's what I say they didn't do. And if I was going to guess back in 2022 what was going to happen, I would have guessed if I wasn't trying to predict the future, which I know every time I tried to predict, it turns out wrong. My prediction would have been the case would have been remanded for a record. But it wasn't. But once again, it limited the attorney-client privilege, so my complaints were, something I never was going to violate anyway. So I really didn't get to the point where I was discouraged. Because there's never been evidence. There's never been a record. I'm sorry. It seems to me the main thrust of your argument is this concept of imminence. Because three years and seven months have gone by, that how could anything be imminent? But is it possible that the concept of imminence in this context is that your statements to the media caused the trial judge to conclude that you were on the brink, that you at any point may divulge things that you shouldn't, that could compromise the entire proceeding. And that once that happens, it's out. It doesn't matter whether the trial is 10 years from now. The damage is done and it's over. That is a concept of imminence. I think the state is arguing, what do you say to that? Yeah, and I understand that. The issue here, though, is you have to recall that there was a finding on the record by Judge White that Drew Peterson had murdered Stacey. That was for that hearsay hearing that they had. That then hearsay evidence was let in. And that was based on the fact that Drew had killed Stacey to keep her from testifying. And that was affirmed. But that was made for a trial court, affirmed by this court, affirmed by the Supreme Court. So we have all these records out there where they're saying three courts are found by a preponderance of the evidence that Drew murdered Stacey. Now, if I just said, if I said, well, yeah, by preponderance of the evidence, but the only thing I could do to add to that is say, hey, Drew confessed to me that he did it in hearsay, he told me. That would be a violation of the attorney-client privilege. That would be something that you're right, could have an effect forever. I would like to see some evidence that that's a possibility. I would like to see an evidence hearing to determine that, yeah, if you don't restrain him, that there's a possibility that some morning, Brodsky could wake up, get on the phone, and start talking about that. There is none. And if there ever is a hearing, there will not be. Because I mean, I'm telling you, I told you what happened. I'm sworn under oath subject to cross would be something that I would like, if at all possible, if they want to proceed on that, to try to make that record. Because that's the reason that a, and the only reason that the state could make its, sustain its heavy burden and defeat the presumption of unconstitutionality of a restriction on the First Amendment. Any additional questions? No. Any follow-up? So Mr. Brodsky, your time is up on this particular argument. We thank both sides for a spirited discussion. We're going to take a brief break, and then we're going to continue along these lines in the next case. Can I say one thing? If I want to suggest a remedy. Oh, I can do it. I'll do it. Suggest a remedy? Yeah, if it was to do something, something to the question. Sure, go ahead. Vacate the contempt order. I mean, vacate the gag order non-proton to a reasonable period, let's say one year, which would make it May 2023. And remand it for a further proceedings, if the court deems it necessary to make findings. All right, thank you. We'll take the matter under advisement. Court's going to be in recess briefly until the next argument. Thank you.